ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/49/07
```

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - v. -

DOMINICK DEVITO,                              :    **SEALED INDICTMENT**
DANIEL FORBES,                                :
ROBERT DIDONATO,                              :
JOHN LISCIO, and                              :    S3 06 Cr. 1089 (BSJ)
LOUIS CORDASCO, Jr.,                          :
                                              :
             Defendants.       :

- - - - - - - - - - - - - - - - - - X

## COUNT ONE

(CONSPIRACY TO COMMIT BANK FRAUD)

The Grand Jury charges:

### BACKGROUND

1.    At all times relevant to this Indictment, DOMINICK
DEVITO, the defendant, was the leader of a real estate investment
scheme whose primary objective was to purchase multi-million
dollar residential properties in Westchester County with loans
obtained through the submission of false and misleading
information to banks and other lenders.  Among other things,
DEVITO identified properties for sale, orchestrated the purchase
of the properties and performed construction work at the
properties.

2.    At various times relevant to this Indictment, a
co-conspirator not named herein ("CC-1") purchased and sold
residential real estate at the direction of DOMINICK DEVITO, the

defendant, including, among other properties, 116 Lakeshore Drive, Eastchester, New York ("116 Lakeshore Drive), 28 Brae Burn Drive, Purchase, New York ("28 Brae Burn") and 4350 Purchase Street, Purchase, New York ("4350 Purchase") in Westchester County.  At certain times relevant to this Indictment, CC-1 permitted DEVITO to reside in 28 Brae Burn.

3.    At various times relevant to this Indictment, a co-conspirator not named herein ("CC-2") purchased residential real estate at the direction of DEVITO, including, among other properties, 29 Pinehurst Drive, Purchase, New York ("29 Pinehurst"), 3801 Purchase Street, Purchase, New York ("3801 Purchase") and 28 Scott Circle, Purchase, New York ("28 Scott Circle") in Westchester County.

4.    At all times relevant to his Indictment, DANIEL FORBES, the defendant, held himself out as a forensic accountant who assisted DEVITO in the operation and management of DEVITO's fraudulent real estate venture, among other things.

5.    At all times relevant to this Indictment, ROBERT DIDONATO, the defendant, was a residential real estate broker who worked for a real estate company in Rye, New York.  At various times relevant to this Indictment, DIDONATO acted as a real estate broker for DEVITO, FORBES, CC-1 and CC-2 in their purchase of the properties that were the subject of the scheme.

2

**SCHEME TO DEFRAUD**

6.    As set forth more fully below, from in or about January 2002 through in or about November 2004, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, engaged in an illegal scheme to purchase and re-finance several multi-million dollar residential properties with mortgage and home equity loans that were often equal to or in excess of one hundred percent of a property's actual market value, so that the defendants and their co-conspirators did not have to put any of their own money at risk in the transaction. To that end, the defendants submitted and caused to be submitted to various federally-insured banks certain documents, including loan applications, contracts of sale, deeds, real estate transfer documents, and title reports, among others, which contained materially false or misleading information about the credit-worthiness of the borrower, the chain of title to the property, and the sale price of the home, among other things, for the purpose of inducing banks to make loans that they otherwise would not have funded.

7.    As part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, identified properties for sale in various communities in Westchester County, including Purchase, New York. The properties identified by the defendants were sometimes purchased in the names of CC-1 and CC-2.

3

8.    As a further part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans, often in the names of CC-1 or CC-2, to purchase properties by falsely representing to various banks the property's sale price and, by extension, its actual market value.  The defendants submitted and caused to be submitted to various banks certain documents, such as loan applications and contracts of sale, that fraudulently reflected an artificially high sale price for a particular property.  In so doing, the defendants induced banks to lend more money, pursuant to the banks' internal loan-to-value lending guidelines, than the bank would otherwise have loaned. In some cases, the defendants obtained loans for amounts in excess of one hundred percent of a property's actual market value.

9.    As part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, falsely represented the sale price of a property to the banks in various ways.  In some cases, the defendants orchestrated the "sale" or "flip" of the property from the seller to a first buyer, and then, in turn, to a second buyer, within a matter of weeks.  The "sale" to the first buyer reflected, on paper, the agreed-upon sale price of the property with the seller, and thus, its actual market value.  The "sale" from the first buyer to the second

4

buyer reflected, on paper, the fraudulently inflated sale price of the property.  The documents submitted to the banks in these cases falsely represented, among other things, the chain of title to the property, in order to disguise from the banks the flip of the property through the first buyer and the attendant increase in the property's sale price.

10.  As a further part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans to purchase properties by falsifying certain personal and financial information about the borrower that was material to the banks in their lending decisions.  Specifically, the defendants submitted and caused to be submitted to various banks documents that contained false and misleading information concerning the borrower's income, assets, and existing debt, as well as the borrower's intent to reside in the property as a primary residence, when, in fact, the properties were typically purchased for investment purposes.

11.  As a further part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans to purchase properties by falsely representing to various banks that the borrower had equity in the property when, in fact, the borrower purchased the property with one hundred percent

financing and none of his own money at risk.

12.  As a further part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, created and caused to be created documents intended to "paper over" the fraudulent nature of the transactions.  These documents purported to forgive monies or explain monies owed by the borrower to the seller, as a means of justifying the fraudulently inflated sale price of the property.

13.  As a further part of the scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, "cashed out" on certain properties by taking additional private loans against the already fraudulently-inflated sale price of the properties.  The proceeds of these loans, which were never repaid in full, were deposited in a bank account used for the benefit of DEVITO, among others.

14.  As a result of the defendants' scheme to defraud, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, obtained millions of dollars in loan proceeds, enabling them to control certain properties that they otherwise would not have been able to purchase and finance.  In addition, the defendants earned money from fees and commissions on the sale or re-finance of the properties.  The banks, on the other hand, lost millions of dollars when the defendants and their co-

conspirators defaulted on mortgage payments and caused several of the properties to go into foreclosure.

## **THE CONSPIRACY**

15.   From at least in or about January 2002 through in or about November 2004, in the Southern District of New York and elsewhere, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 1344 of Title 18, United States Code.

16.   It was a part and an object of the conspiracy that DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, including but not limited to First National Bank of Arizona, Washington Mutual Bank, Chevy Chase Bank, GreenPoint Mortgage and Lehman Brothers Bank, FSB, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

7

## **Overt Acts**

17.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about April 2002, ROBERT DIDONATO, the defendant, offered to purchase 29 Pinehurst on behalf DOMINICK DEVITO, the defendant, for its full asking price of $895,000 before the property was listed on the market.

b.    On or about July 22, 2002, ROBERT DIDONATO, the defendant, caused a false and misleading statement to be made to Chevy Chase Bank regarding, among other things, the sale price and the chain of title to 29 Pinehurst in connection with a loan application by CC-2 for a mortgage to purchase 29 Pinehurst.

c.    On or about July 24, 2002, DOMINICK DEVITO, the defendant, attended a closing on behalf of CC-1 for 28 Brae Burn Drive, which was being purchased in the name of CC-1, at which documents were submitted to First National Bank of Arizona that contained false and misleading information about, among other things, CC-1's intent to live in the property as CC-1's primary residence, and CC-1's equity in the property.

d.    In or about August 2002, DOMINICK DEVITO, the defendant, moved into 28 Brae Burn Drive as his primary residence.

e.   On or about August 2, 2002, ROBERT DIDONATO, the
defendant, attended a real estate closing for 29 Pinehurst Drive,
which was sold to CC-2, at which documents were submitted to
Chevy Chase Bank that contained false and misleading information
about, among other things, the sale price of the property.

f.   On or about September 29, 2002, DOMINICK DEVITO
caused approximately $17,000 of loan proceeds related to 28 Brae
Burn to be wired to a bank account controlled by DEVITO.

g.   On or about October 10, 2002, DANIEL FORBES, the
defendant, attended a real estate closing for 116 Lakeshore Drive
on behalf of DEVITO and CC-1, the seller.  At the closing, FORBES
caused the home buyer to write two "show" checks, totaling over
$550,000, in order to create the false appearance that the buyer
had paid CC-1 $1.7 million, when, in fact, the sale price of the
property was approximately $1 million.

h.   In or about January 2003, ROBERT DIDONATO, the
defendant, moved into 29 Pinehurst as his primary residence.

i.   In or about January 2003, DOMINICK DEVITO, the
defendant, caused an appraisal to be created with an inflated
value for the property located at 3801 Purchase Street.

j.   On or about July 1, 2003, DOMINICK DEVITO, the
defendant, attended a real estate closing for 4350 Purchase
Street, which was being purchased for the benefit of CC-1, at
which documents were submitted to Chevy Chase Bank that contained

false and misleading information about, among other things, the sale price of the property.

k.    In or about November 2003, DANIEL FORBES, the defendant, submitted and caused to be submitted to Washington Mutual Bank loan application documents which contained false and misleading statements about, among other things, FORBES's income in connection with FORBES's purchase of a property located at 9 Oak Valley, Purchase, New York.

l.    In or about June 2004, ROBERT DIDONATO, the defendant, prepared a loan application for the purpose of purchasing 29 Pinehurst which contained false statements about the amount of a down payment he had made on the property.

### COUNT TWO

(CONSPIRACY TO COMMIT MAIL FRAUD)

18.    The allegations contained in paragraphs one through five of this Indictment are repeated and re-alleged as if fully set forth herein.

19.    At all times relevant to this Indictment, JOHN LISCIO, the defendant, owned Liscio Insurance Agency, Inc., in Tuckahoe, New York.   LISCIO, the defendant, was a licensed insurance agent who sold insurance products to, among other people, CC-1, CC-2 and DEVITO.

20.    At all times relevant to this Indictment, LOUIS CORDASCO, JR., the defendant, worked for Crystal Restoration

Enterprises, Inc., in Port Chester, New York, a company that specializes in emergency clean-up services, including in residential homes, for, among other things, water damage from a broken pipe.  At various times relevant to this Indictment, CORDASCO was responsible for, among other things, performing emergency clean-up services for homes owned by CC-1 and CC-2.

### Scheme To Defraud

21.  As set forth more fully below, from in or about January 2003 through in or about February 2005, DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS CORDASCO, JR., the defendants, engaged in a scheme to defraud insurance companies by submitting, and causing to be submitted, insurance claims and supporting documents for water damage to homes and/or their contents caused by broken pipes, which claims contained false and misleading information about, among other things, the value of the contents of the home, for the purpose of obtaining insurance proceeds to which the defendants and their co-conspirators were not otherwise entitled.

22.  As part of the scheme to defraud, CC-1 and CC-2, at the direction of DEVITO, the defendant, purchased various insurance policies through LISCIO.  At various times relevant to the conspiracy, LISCIO sold various insurance policies to CC-1 for 28 Brae Burn and 4350 Purchase, and to CC-2 for 28 Scott Circle, and 3801 Purchase, among other properties.  In addition,

11

LISCIO, the defendant, sold an insurance policy to DEVITO for DEVITO'S personal property while DEVITO lived at 28 Brae Burn.

23.    As a further part of the scheme to defraud, DOMINICK DEVITO, LOUIS CORDASCO, JR., and JOHN LISCIO, the defendants, planned to break pipes in various homes owned by CC-1 and/or CC-2, and caused the breaking of pipes in such homes.

24.    As a further part of the scheme to defraud, DOMINICK DEVITO, LOUIS CORDASCO, JR., JOHN LISCIO, and ROBERT DIDONATO, the defendants, submitted and caused to be submitted insurance claims for water damage from a broken pipe at 28 Brae Burn, which claims the defendants knew contained false and misleading statements.

25.    As a further part of the scheme to defraud, JOHN LISCIO, the defendant, engaged LOUIS CORDASCO, JR., the defendant, to perform emergency clean-up work at various homes that had suffered water damage from broken pipes, including 28 Brae Burn and 28 Scott Circle.

26.    As a further part of the scheme to defraud, DOMINICK DEVITO, the defendant, caused checks representing insurance proceeds from a flood at 28 Brae Burn to be deposited into a bank account used for the benefit of DEVITO, among others.

## THE CONSPIRACY

27.    From at least in or about January 2003, up to and including in or about February 2005, in the Southern District of

New York and elsewhere, DOMINICK DEVITO, ROBERT DIDONATO, JOHN
LISCIO, and LOUIS CORDASCO, JR., the defendants, and others known
and unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with each other to
commit offenses against the United States, to wit, to violate
Section 1341 of Title 18, United States Code.

28. It was a part and an object of the conspiracy that
DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS
CORDASCO, JR., the defendants, and others known and unknown,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations and promises, for the
purpose of executing such scheme and artifice and attempting so
to do, unlawfully, willfully and knowingly would and did place in
a post office and authorized depository for mail matter, matters
and things to be sent and delivered by the Postal Service, and
would and did deposit and cause to be deposited a matter and
thing to be sent and delivered by a private and commercial
interstate carrier, and would and did take and receive therefrom,
such matters and things, and would and did knowingly cause to be
delivered by mail and such carrier according to the direction
thereon, and at the place at which it was directed to be
delivered by the person to whom it was addressed, such matters
and things, in violation of Title 18, United States Code, Section

13

1341.

## OVERT ACTS

29.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about January 23, 2003, JOHN LISCIO, the defendant, on behalf of DEVITO, the defendant, and CC-1, reported to an insurance company that 28 Brae Burn had suffered water damage from a broken pipe.

b.   On or about February 1, 2003, ROBERT DIDONATO, the defendant, entered into a sham residential real estate lease with DEVITO for $12,500 a month, for the purpose of assisting DEVITO in obtaining insurance proceeds from the pipe break at 28 Brae Burn.

c.   On or about February 4, 2003, LOUIS CORDASCO, the defendant, submitted and caused to be submitted to an insurance company a fraudulently inflated appraisal for certain of DEVITO's personal possessions as part of DEVITO's insurance claim from the pipe break at 28 Brae Burn.

d.   On or about February 8, 2003, DOMINICK DEVITO, the defendant, submitted and caused to be submitted to an insurance company false and misleading information concerning the value of DEVITO's personal items, including rugs and art work,

14

which were purportedly damaged by the pipe break at 28 Brae Burn.

       e.    On or about April 24, 2004, an insurance company sent, via United States Mail, checks representing the proceeds of the insurance claim at 28 Brae Burn to an office in Westchester County.

       f.    On or about June 25, 2004, ROBERT DIDONATO, the defendant, gave false and misleading sworn testimony regarding the rent payments he received from DEVITO as a result of the pipe break at 28 Brae Burn.

       g.    On or about January 29, 2005, JOHN LISCIO, the defendant, met with CC-1 at LISCIO's office in Tuckahoe, New York.  During the course of the meeting, LISCIO described how LISCIO, LOUIS CORDASCO, JR., and others intended to break a pipe at 4350 Purchase, CC-1's house, for the purpose of fraudulently obtaining insurance proceeds.

       h.    On or about February 2, 2005, JOHN LISCIO, LOUIS CORDASCO, JR. and CC-1 met at 4350 Purchase and discussed how to cause water damage to the home.

       i.    On or about February 8, 2005, LOUIS CORDASCO, JR., the defendant, brought a person to CC-1's home at 4350 Purchase for the purpose of identifying which pipe to break in the house.

       (Title 18, United States Code, Section 1349.)

**COUNT THREE**

(MAIL FRAUD)

The Grand Jury further charges:

30.   From in or about January 2003 up to and including
in or about June 2004, in the Southern District of New York and
elsewhere, DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and
LOUIS CORDASCO, JR., the defendants, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations and promises, to wit, a scheme to obtain hundreds
of thousands of dollars in insurance proceeds from water damage
to 28 Brae Burn by, among other things, submitting and causing to
be submitted to an insurance company documents containing false
representations and material omissions regarding, among other
things, the value of certain items of personal property, for the
purpose of executing such scheme and artifice and attempting so
to do, unlawfully, willfully and knowingly would and did place in
a post office and authorized depository for mail matter, matters
and things to be sent and delivered by the Postal Service, and
would and did take and receive therefrom, such matters and
things, and would and did knowingly cause to be delivered by mail
according to the direction thereon, and at the place at which it
was directed to be delivered by the person to whom it was
addressed, such matters and things, to wit, DEVITO, DIDONATO,

16

LISCIO, and CORDASCO, the defendants, and others known and unknown, caused checks, representing the proceeds of the insurance fraud, to be mailed, on or about April 17, 2003 and on or about April 24, 2003, by an insurance company via the Postal Service, from North Carolina to an office in Westchester County, New York.

(Title 18, United States Code, Section 1341).

## FORFEITURE ALLEGATION

### (As to Count One)

31.  As a result of committing the bank fraud offense alleged in Count One of this Indictment, DOMINICK DEVITO, DANIEL FORBES and ROBERT DIDONATO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the bank fraud offense alleged in Count One of this Indictment, including but not limited to the following: at least $7,500,000 in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment, for which the defendants are jointly and severally liable.

### Substitute Assets Provision

32.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due
            diligence;

      b.    has been transferred or sold to, or
            deposited with, a third party;

      c.    has been placed beyond the
            jurisdiction of the court;

      d.    has been substantially diminished
            in value; or

      e.    has been commingled with other
            property which cannot be divided
            without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C.
§ 982(b), to seek forfeiture of any other property of the
defendants up to the value of the forfeitable property.

    (Title 18, United States Code, Sections 982 and 1349.)

## FORFEITURE ALLEGATION

(As to Counts Two and Three)

    33.  As a result of committing the mail fraud offenses
alleged in Counts Two and Three of this Indictment, DOMINICK
DEVITO, ROBERT DIDONATO, JOHN LISCIO and LOUIS CORDASCO, JR., the
defendants, shall forfeit to the United States, pursuant to 18
U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461, all property, real and
personal, that constitutes or is derived, directly and
indirectly, from proceeds traceable to the commission of the mail

18

fraud offenses alleged in Counts Two and Three of this
Indictment, including but not limited to the following: at least
$700,000 in United States currency, representing the amount of
proceeds obtained as a result of the offenses alleged in Counts
Two and Three of this Indictment, for which the defendants are
jointly and severally liable.

### Substitute Assets Provision

34.    If any of the property described above as being
subject to forfeiture, as a result of any act or omission of the
defendants:

        a.   cannot be located upon the exercise of due
diligence;

        b.   has been transferred or sold to, or
deposited with, a third party;

        c.   has been placed beyond the
jurisdiction of the court;

        d.   has been substantially diminished
in value; or

        e.   has been commingled with other
property which cannot be divided
without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C.
§ 853(p), to seek forfeiture of any other property of the

19

defendants up to the value of the forfeitable property.

    (Title 18, United States Code, Sections 981(a)(1)(C), 1341 and 1349; Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461.)


_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

DOMINICK DEVITO,
DANIEL FORBES,
ROBERT DIDONATO,
JOHN LISCIO, and
LOUIS CORDASCO, JR.,

Defendants.

## INDICTMENT

S3 06 Cr. 1089

(Title 18, United States Code,
Sections 1341, 1344, 1349.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.