UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :
                                            :
                                            : S4 06 Cr. 1098 (BSJ)
            -v-                             :
                                            :
                                            :
DOMINICK DEVITO, et al.,                    :
                                            :
                                            :
                Defendants.                 :
                                            :
                                            :
                                            :

- - - - - - - - - - - - - - - - - -x


GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' PRE-TRIAL MOTIONS


                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              *Attorney for the United States
                              of America*


KATHERINE R. GOLDSTEIN
JONATHAN B. NEW
Assistant United States Attorneys
      *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :
                                            :
                                            :  S4 06 Cr. 1098 (BSJ)
          -v-                               :
                                            :
                                            :
DOMINICK DEVITO, et al.,                    :
                                            :
                                            :
                   Defendants.              :
                                            :
                                            :

- - - - - - - - - - - - - - - - - - -x

**THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANTS' PRE-TRIAL MOTIONS**

The Government respectfully submits this memorandum of
law in opposition to the pre-trial motions of defendants Dominick
DeVito and Louis Cordasco, Jr.  Both DeVito and Cordasco move the
Government for a bill of particulars; Cordasco also seeks advance
notice of any evidence the Government intends to offer pursuant
to Federal Rule of Evidence 404(b).  For the reasons set forth
below, the Government respectfully submits that both defendants'
motions should be denied in their entirety.

**Background**

**A.    The Indictment**

Indictment S4 06 Cr. 1089 (BSJ) (the "Indictment"),
returned by a grand jury on or about April 29, 2008, charges
defendants Dominick DeVito and Robert DiDonato with participating

1

in a wide-ranging mortgage fraud scheme, and it charges defendants DeVito, DiDonato, John Liscio and Louis Cordasco, Jr. with participating in a related insurance fraud scheme. The Indictment also charges DeVito with one count of obstruction of justice. As is described below, the 28-page indictment sets forth the charges in this case in great detail.

First, the Indictment charges DeVito and DiDonato with participating in a conspiracy to commit bank fraud from in or about January 2002 through November 2004. DeVito was the leader of a fraudulent real estate investment scheme (Ind't ¶ 1); DiDonato acted as a real estate broker for DeVito in the purchase of properties that were the subject of the scheme (Ind't ¶ 2).

The purpose of the illegal conspiracy was "to purchase and re-finance several multi-million dollar residential properties with mortgage and home equity loans obtained through the submission of false and misleading information to banks and other lenders." (Ind't ¶ 3). The Indictment specifies each of the properties involved in the defendants' scheme: 28 Brae Burn Drive, Purchase, New York ("28 Brae Burn"), 29 Pinehurst Drive, Purchase, New York ("29 Pinehurst"), 116 Lakeshore Drive, Eastchester, New York ("116 Lakeshore Drive"), 9 Oak Valley Lane, Purchase, New York, ("9 Oak Valley"), 4350 Purchase Street, Purchase, New York ("4350 Purchase"), 3801 Purchase Street, Purchase, New York ("3801 Purchase"), 4 Ridgeland Manor, Rye, New

2

York ("4 Ridgeland") and 28 Scott Circle, Purchase, New York ("28 Scott Circle").  (Ind't ¶ 3).

The Indictment then describes in specific detail how the defendants committed the crime, including detailing eleven overt acts in furtherance of the conspiracy.  (Ind't ¶¶ 4-15). Specifically, the Indictment explains that the defendants identified properties for sale in Westchester County (Ind't. ¶ 5).  The defendants then sought mortgage and home equity loans from federally-insured banks to purchase or refinance these homes.  In that regard, the defendants submitted and caused to be submitted to the banks certain documents, including the loan application, the contract of sale, the deed, real estate transfer documents and title reports, which contained materially false or misleading information about "the credit worthiness of the borrower, the chain of title to the property, and the sale price of the home," in order to fraudulently induce the banks to make loans.  (Ind't ¶ 4).

The Indictment then amplifies these allegations by providing specific details about the means and methods of the conspiracy, or, put another way, the various ways in which the banks were misled.  Thus, the Indictment explains that for certain properties the defendants fraudulently induced banks to lend more money than the properties were actually worth.  The defendants accomplished this goal by submitting documents to the

3

banks that reflected a fraudulently inflated sale price for the
property.  By misleading the banks in this way, the defendants
induced the banks to lend more money, pursuant to internal loan-
to-value lending guidelines, than the banks otherwise would have
loaned.  The Indictment identifies the documents that were so
submitted to be the loan applications and the contracts of sale.
(Ind't ¶ 6).  Furthermore, the Indictment makes clear that the
defendants successfully obtained loans for amounts in excess of
the property's actual market value for the following specific
properties: 29 Pinehurst, 116 Lakeshore, 4 Ridgeland and 28 Scott
Circle.

        One of the ways that the defendants fraudulently
inflated the sale price of a property was by "flipping" the
property from one buyer to a second buyer within a short period
of time – with an attendant fraudulent increase in the sale price
of the property.  (Ind't ¶ 7).  The Indictment identifies the
specific properties that were the subject of this aspect of the
scheme to be 29 Pinehurst, 4 Ridgeland, 4350 Purchase Street and
28 Scott Circle, and specifically notes that documents submitted
to the banks falsely represented the chain of title to the
property in order to disguise the flips.

        In addition to fraudulently inflating the sale price of
the property, another way in which the defendants misled the
banks was through the submission of documents that contained

4

materially false information about the borrowers' personal and
financial information.  As the Indictment specifies, the loan
application forms contained false and misleading information
about the borrower's income, assets and existing debt, as well as
the borrower's intent to reside in the property as a "primary
residence," when in fact the properties were used generally for
investment purposes.  (Ind't ¶ 8).

Finally, the Indictment explains, the defendants misled
the banks by falsely representing that the borrowers had equity
in the property when, in fact, the borrower was purchasing the
property with one-hundred percent financing, and none of his own
money at risk.

As a result of the scheme, the defendants obtained
control over certain properties they otherwise would not have
been able to purchase, and they earned money from loan proceeds,
fees and commissions.  (Ind't ¶ 12).

Thereafter, in Counts Two through Twelve, the
Indictment charges ten substantive counts of bank fraud; each of
these counts corresponds to a fraudulent loan that the Government
has alleged is a part of the mortgage fraud scheme charged in
Count One.  In each Count, the Indictment identifies the property
at issue, the date of the loan, the federally-insured bank that
made the loan, the amount of the loan and the materially false
statements made to the bank as part of the scheme.  (Ind't ¶¶ 16-

26).

Next, the Indictment charges DeVito with obstructing justice in connection with his sentencing in a prior federal case. Specifically, the Indictment alleges that, in connection with his sentencing in United States v. Pasquale Parello, et al., 01 Cr. 1120 (RLC), a case charging him with racketeering and bank fraud offenses, DeVito submitted an affidavit containing false and misleading information to the United States Probation Office. The Indictment specifies the false and misleading information at issue to be the value of DeVito's assets and his personal net worth following his sale of property located at 3747 Purchase Street, Purchase, New York. (Ind't ¶ 27).

Counts Fourteen and Fifteen relate to the insurance fraud scheme charged in the Indictment. All four defendants are named in these Counts. Count Fourteen charges a conspiracy to commit mail fraud from in or about January 2003 through in or about February 2005. The defendants are alleged to have schemed to defraud insurance companies by submitting, and causing to be submitted, insurance claims and supporting documents for water damage to homes and/or their contents caused by broken pipes. These claims are alleged to have contained false and misleading information, for the purpose of obtaining insurance proceeds to which the defendants were not entitled. (Ind't ¶ 31).

The Indictment then details the means and methods of

this scheme.  As the Indictment makes clear, all the defendants submitted and caused to be submitted false insurance claims for water damage from a broken pipe at 28 Brae Burn.  (Ind't ¶ 33). DeVito caused checks from the insurance company to be deposited in a bank account he used for his benefit.  (Ind't ¶ 36).

The Indictment also alleges that Cordasco, as part of the scheme, performed clean-up services at 28 Brae Burn and 28 Scott Circle.  (Ind't ¶ 35).

Finally, Cordasco and Liscio also planned to break a pipe at 4350 Purchase Street for the purpose of submitting and causing to be submitted to an insurance company claims for payment that contained false and misleading statements.  (Ind't ¶ 34).

The Indictment then sets forth nine overt acts, including specifying certain mailings that were caused as a result of the defendants' scheme.  (Ind't ¶ 39).

Finally, Count Fifteen alleges a substantive charge of mail fraud.  Specifically, the Indictment sets forth the dates of the mail fraud scheme; identifies the scheme as one to obtain money in insurance proceeds from water damage to 28 Brae Burn through the submission of documents containing false representations and material omissions regarding, among other things, the value of certain items of personal property; and identifies the mailings that were caused as a result of the

defendants' scheme.   (Ind't ¶ 40).

## B.   Discovery Production

Beginning in December 2006, the Government has provided extensive discovery in this case.  See Exhibit A, attached hereto, containing the Government's discovery letters in this case.  As to the mortgage fraud scheme, the Government produced loan files from the banks, organized by lender and bates-stamped, for each of the loans that is named in the Indictment.  The Government also produced files from the mortgage broker which brokered the loans that are charged in the Indictment.  In addition, the Government has produced documents, identified by the name of the seller, or the seller's lawyer, for certain of the properties, for purposes of comparison with the loan files obtained from the banks.

As for the insurance fraud scheme, the Government produced five CDs containing audio and/or video of consensually-recorded meetings between a confidential informant and Liscio and Cordasco relating to the plan to break a pipe at 4350 Purchase Street and submit a fraudulent claim for insurance proceeds. Attendant draft transcripts were also provided to the defense. In addition, the Government produced several additional recordings of pertinent telephone calls between the informant and Liscio and/or Cordasco.

The Government also provided documentary evidence

related to the insurance fraud scheme.  The Government produced
an insurance claim file related to the flood at 28 Brae Burn, as
well as an insurance claim file for a flood at 28 Scott Circle.
As well, the Government produced documents obtained from many of
the appraisers and/or service providers who gave estimates of
damage to the insurance company for the claims related to 28 Brae
Burn.

Finally, the Government produced bank records for,
among other things, the bank account in which proceeds of the
frauds were deposited.

**ARGUMENT**

**The Court Should Deny The Request For A Bill Of Particulars**

Defendants DeVito and Cordasco seek an order from the
Court directing the Government to provide them with detailed
bills of particulars which amount to a request for an exhibit
list in advance of trial.  DeVito and Cordasco, however,
presently possess more than sufficient information to understand
the charges against them, to prepare a defense, to avoid unfair
surprise at trial, and to protect themselves against double
jeopardy.  As they are entitled to no more, their requests for a
bill of particulars should be denied.

**A.    Applicable Law**

The proper scope and function of a bill of particulars
is to furnish facts supplemental to those contained in the

indictment that are <u>necessary</u> to apprise the defendant of the charges against him with sufficient precision so as to enable him to prepare his defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); <u>United States</u> v. <u>Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990); <u>United States</u> v. <u>Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987); <u>United States</u> v. <u>Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984). "Those are the only legitimate purposes of a bill of particulars." <u>United States</u> v. <u>Sindone</u>, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002). "'A bill of particulars should be required only where the charges of the indictment are so general that they do not advise defendant of the specific acts of which he is accused.'" <u>Torres</u>, 901 F.2d at 234 (quoting <u>United States</u> v. <u>Feola</u>, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987)). <u>See</u> <u>United States</u> v. <u>Earls</u>, 2004 WL 350725, at *4 (S.D.N.Y. Feb. 25, 2004). Accordingly, the ultimate test is whether the information sought is necessary, not whether it is helpful. <u>See</u> <u>Earls</u>, 2004 WL 350725, at *4; <u>United States</u> v. <u>Lauerson</u>, 1999 WL 440619, at *3 (S.D.N.Y. June 28, 1999); <u>United States</u> v. <u>Percan</u>, 1999 WL 13040, at *5 (S.D.N.Y. Jan. 13, 1999).

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required. <u>Bortnovsky</u>, 820 F.2d at 572; <u>United States</u> v. <u>Spy Factory</u>, 960 F. Supp. 684, 690-

91 (S.D.N.Y. 1997).  The vehicle of a bill of particulars serves
to inform a defendant of the nature of the charge, when he is
otherwise insufficiently informed, and must not to be misused to
compel disclosure of how much the Government can prove, nor to
foreclose the Government from using proof it may develop as the
trial approaches.  See United States v. Henry, 861 F. Supp. 1190,
1197 (S.D.N.Y. 1994).  "[A] bill of particulars is not a general
investigative tool, a discovery device, or a means to compel the
government to disclose evidence or witnesses to be offered prior
to trial."  United States v. Nunez, 2001 WL 91708, at *5
(S.D.N.Y. Feb. 1, 2001); accord Earls, 2004 WL 350725, at *5.  A
bill of particulars should not be used to learn evidentiary
detail, see Torres, 901 F.2d at 234, the precise manner in which
the charged crimes were committed, see United States v. Andrews,
381 F.2d 377, 377-78 (2d Cir. 1967), the manner in which the
Government will prove the charges, see United States v. Leonelli,
428 F. Supp. 880, 882 (S.D.N.Y. 1977), all the overt acts in
furtherance of a conspiracy, see United States v. Carroll, 510
F.2d 507, 509 (2d Cir. 1975), or particular acts that a
particular defendant participated in, had knowledge of, or for
which he is being held responsible, see United States v. Jimenez,
824 F. Supp. 351, 363 (S.D.N.Y. 1993).  For example, "the
government is not required to prove how or when the conspiracy
was formed or how or when defendants joined the conspiracy."

11

United States v. Pacheco, 902 F. Supp. 469, 474 (S.D.N.Y. 1995).

There are several reasons for this restricted use of a bill of particulars. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendants will tailor their testimony to explain away the Government's pre-disclosed case. See United States v. Cimino, 31 F.R.D. 277, 279 (S.D.N.Y. 1962). As a court in this District has observed,

> The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the Government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.

Sindone, 2002 WL 48604, at *1 (citing United States v. Simon, 30 F.R.D. 53, 55 (S.D.N.Y. 1962); Cimino, 31 F.R.D. 277, 279 (S.D.N.Y. 1962)).

Second, detailed inquiries into the Government's case would unduly restrict the Government in presenting its proof at trial. See, e.g., Jimenez, 824 F. Supp. at 363; United States v. Goldman, 439 F. Supp. 352 (S.D.N.Y. 1977). Courts in this District have consistently held that, because a bill of particulars "confines the Government's proof to particulars furnished, requests for a bill of particulars should not be

granted where the consequence would be to restrict unduly the
Government's ability to present its case."  <u>United States</u> v.
<u>Feola</u>, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987).

        In sum, demands for "whens" and "wheres" and "with
whoms" relating to the formation of and participation in schemes
and conspiracies routinely have been denied.  <u>Torres</u>, 901 F.2d at
233-34; <u>United States</u> v. <u>Wilson</u>, 565 F. Supp. 1416, 1438-39
(S.D.N.Y. 1983).  If a defendant has been given adequate notice
of the charges against him in the indictment or in some
alternative form, the Government need not disclose additional
details about the case.  <u>See</u> <u>Bortnovsky</u>, 820 F.2d at 574; <u>United
States</u> v. <u>Payden</u>, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

**B.   Discussion**

        In light of the clear legal principles that limit the
defendants' right to investigate the Government's proof and legal
theories before trial, the defendants' requests for a bill of
particulars should be denied.  The Indictment and the extensive
discovery materials produced in this case all provide the
defendants with detailed information relating to the conduct with
which they are charged.

        **1.   The Mortgage Fraud Scheme (Counts One through
             Twelve)**

        With regard to the mortgage fraud charges (Counts One
through Twelve), as is recounted above, the Indictment itself
amply informs defendant DeVito of the charges against him.  The

                              13

Indictment exhaustively sets forth the means and methods of the scheme, and specifically identifies (1) each property that was the subject of the scheme, (2) each loan that is alleged to be fraudulent; (3) the date on which the loan was made; (4) the amount of the loan; (5) the bank that made each loan; and (6) with regard to each and every loan, the materially false and misleading statements that are alleged to have been made to the banks.  In addition, the Indictment identifies the kinds of documents in which false and misleading statements were made, including the loan application, the contract of sale, the deed, real estate transfer documents and title reports.  (Ind't ¶ 4).

Although this information is sufficient to satisfy the Government's obligations to inform the defendant of the charges against him and to prevent unfair surprise, the discovery in this case provides even more information.  With respect to each loan alleged to be fraudulently procured, the Government produced the respective bank's entire loan file.  The Government did not simply turn over the files in an undifferentiated production of documents.  Rather, each loan file was produced with bates stamps and was identified by property and bates range in a corresponding discovery letter.  Therefore, in addition to consulting the Indictment, DeVito need only consult the loan files corresponding to each property identified in the Indictment in order to find all of the information he needs to prepare for trial.

14

In addition, the Government produced documents maintained by the sellers (or the sellers' lawyers) of four of the properties. As counsel for the Government has orally explained to defense counsel for DeVito, a comparison of the loan documents submitted to the banks with documents kept by the sellers reveals significant inconsistencies, including differences in the reported sale price of three of those properties. Such a comparison also reveals that in certain cases the sellers possess one version of a document, such as a contract of sale, while the bank was supplied with an altered version of that document. Accordingly, these documents, when viewed in conjunction with the roadmap to the fraud provided by the Indictment, more than sufficiently advise DeVito of the charges in this case.

Notwithstanding the abundance of information provided to DeVito, he now moves this Court for a bill of particulars seeking the following information: (1) identification of all co-conspirators; (2) all properties at issue; (3) the banks and loans in question; (4) the specific documents that the Government alleges contain misrepresentations; and (5) the items in those documents the Government alleges to be false. With regard to the substantive bank fraud counts, DeVito seeks the same information, as well as particulars regarding whether or not DeVito sought to repay the loan. (DeVito Mem. at 6).

15

As the description of the Indictment, discovery and applicable law provided above make clear, DeVito either has all of the information he seeks, or he is not entitled to it. Indeed, many of the defendant's requests can only be described as a thinly disguised attempt to obtain an exhaustive preview of the Government's case in advance of trial. As the case law cited above makes clear, however, the defendant is not entitled to such a preview.

First, as to DeVito's request for the identities of all co-conspirators, he has not met the threshold showing of need for this information. DeVito has not explained how such information is <u>necessary</u> for the preparation for his defense, rather than merely helpful to him. Without such a showing, requests for the names of co-conspirators are routinely denied. <u>See</u> <u>Torres</u>, 901 F.2d at 233-34 (upholding district court's denial of defendant's request for "the identity of other persons 'known and unknown" as alleged in ... the indictment"); <u>United States</u> v. <u>Butler</u>, 351 F. Supp. 2d 121, 134 (S.D.N.Y. 2004) ("The indictment is not required to identify all alleged co-conspirators, or to specify the nature, time, and place of every overt act the defendant or others committed in furtherance of the alleged conspiracy, or to set forth all the evidence the Government intends to introduce. These, indeed, are the very sorts of information with respect to which courts routinely deny requests for particularization.").

16

Courts have ordered the Government to provide a list of co-conspirators "in cases where the number of defendants was large, where the alleged conspiracy spanned long periods of time and where the alleged schemes are wide ranging." United States v. Reddy, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2002) (citing cases). But none of those factors are present here. There are two defendants charged in the mortgage fraud scheme;[1] the alleged conspiracy spanned less than two years; and the scheme alleged is discrete in scope and under the direct control and supervision of DeVito. Thus, the likelihood that DeVito will be surprised by the identity of any unnamed co-conspirators is miniscule. Accordingly, this request should be denied.

The next two categories of information that DeVito seeks – all the properties at issue, and the banks and loans in question – have already been provided in the Indictment. As explained above, the Indictment identifies each of the properties alleged to be the subjects of the scheme, as well as each of the banks and loans in question. Thus, no additional particularization here is warranted.

DeVito also seeks an itemization of the false or misleading information submitted to the banks for each loan in question. As described above, the substantive bank fraud counts

---

[1] A third co-conspirator, Daniel Forbes was identified and charged in an earlier indictment in this case.

17

in the Indictment particularize the materially false statements
alleged to have been made to the various banks (e.g., the sale
price of the property, the borrower's income, the borrower's
intent to live in the property, etc.) with respect to each loan.
Although the Government may, throughout the course of the trial,
prove that other statements in the loan files were also false,
the Government does not intend to argue that categories of
statements other than those identified in the Indictment were
materially false or misleading.  Because the Indictment provides
ample information on this score, this request should also be
denied.  Where, as in this case, the Indictment is sufficiently
detailed, courts in this District simply do not require the
Government to do more.  See United States v. Reddy, 190 F. Supp.
2d 558, 568-69 (S.D.N.Y. 2002) (denying, with limited exception,
bill of particulars request for specific false statements and
fraudulent documents in an accounting fraud case with production
of 250,000 documents where indictment contained sufficient
information to enable defendants to prepare for trial); see also
United States v. Mahaffy, 446 F. Supp. 2d 115, 119, 120 (E.D.N.Y.
2006) (in securities fraud case, denying request for "substance
of the materially false statements allegedly made by certain
defendants" where indictment specifies "the date, volume, price,
and source of the allegedly unlawful transactions at issue" along
with "substantial descriptions" of false statements); United

18

States v. Zoernack, 2005 WL 1837962, at *4 (S.D.N.Y. Aug. 2, 2005) (denying request for identification of "any and all fraudulent statements" where indictment alleged, for each allegedly fraudulent transaction, "the date, amount in question and the banks to and from which the money was transferred" because such a request "is beyond the proper scope of a bill of particulars").

DeVito's final request is for the identification of each document the Government contends contains a false statement. This demand can only be described as a request for an exhibit list from the Government three months before trial. These sorts of requests are routinely denied, because of the fundamental principal that a bill of particulars is not to be used as an investigative tool, or a tool of discovery, but rather "is meant to apprise the defendant of the essential facts of a crime and should be required only where the charges of an indictment are so general that they do not advise a defendant of the specific acts of which he is accused." United States v. Ordaz-Gallardo, 520 F. Supp. 2d 516, 521-22 (S.D.N.Y. 2007) (quoting United States v. Perez, 940 F. Supp. 540, 550 (S.D.N.Y. 1996)) (emphasis added); see also Torres, 901 F.2d at 234. Where, as here, there is ample specification of the scheme to defraud in general, including identification of the kinds of documents which contain false statements (see, e.g., Ind't ¶ 4 (loan applications, contracts of

19

sale, deeds, real estate transfer documents and title reports)),
and specific identifying details are provided for each fraudulent
loan alleged to be part of the scheme, there is no support in the
law for granting DeVito's request. See Reddy, 190 F. Supp. 2d at
568-69; see also United States v. Earls, 2004 WL 350725, at *4
(in securities and wire fraud case involving false statements,
denying defendant's request for identification of the documents
which support the indictment's charges because the indictment
"includes a clear and extensive statement of the acts the
comprise the allegations against the defendant"); United States
v. RW Professional Leasing Services, 317 F. Supp. 2d 167, 180
(E.D.N.Y. 2004) (in case involving fraudulently obtained loans
from banks, denying bill of particulars request for
identification of the documents that support the Government's
case with respect to each individual allegation for each loan
because the defendants were already aware of the "nature of the
charges against them," and knew "the specific fraudulent loans
that the Government intended to refer to at trial"); United
States v. Silberstein, 2003 WL 21488024, at *6 (S.D.N.Y. June 27,
2003) (in loan fraud case, denying request for "identification of
documents purportedly used in fraud" where the indictment
"clearly specifies the nature of the acts with which the
defendants are charged and the methods by which those acts were
accomplished ...[including] the dates and places where and when

the alleged events occurred, and the means and methods by which the conspiracy was carried out"); United States v. Lauerson, 1999 WL 440619, at *3 (S.D.N.Y. June 28, 1999) (in medical billing fraud case, denying request for particulars where Government promised to identify patient names and dates of service for each allegedly false claim to be introduced at trial; "[a]lthough defendants insist that the Government should be required to further specify exactly which sentences, words or notations in those operative reports are allegedly false or misleading, that level of detail is not required").

Indeed, to compel the Government to preview its evidence in advance of trial would be to subvert the very purpose of a bill of particulars, and would unnecessarily restrict the Government's ability to prove its case. See United States v. Rigas, 258 F. Supp. 2d 299, 304 (S.D.N.Y. 2003) (a bill of particulars should not be used as "a means to lock the government into its proof"); Sindone, 2002 WL 48606, at *1 (defendants are not entitled to use a bill of particulars "to preview the government's evidence or trial strategy, or to require the government to specify the minutiae of how it will prove the charges"); Lauerson, 1999 WL 440619, at *3 ("[A] bill of particulars is not designed to lock the Government into its proof in advance of trial"). Certainly, such an evidentiary preview of each and every document that contains a false or misleading

21

statement would be _helpful_ to DeVito and his co-defendants.  But
it is by no means _necessary_ for DeVito to prepare his defense[2] –
and that is the legal standard against which requests for bills
of particulars are judged.

In any event, DeVito certainly has enough information
from the Indictment to ascertain for himself which documents the
Government will allege contain materially false or misleading
statements.  The false and misleading statements that are the
subject of Counts One through Twelve are all contained in the
loan files obtained from the banks that were produced to and
specifically identified for the defendants in discovery.  Each
loan file contains only a select number of documents containing
representations that were relied upon by the banks.  (_See_ Ind't
¶¶ 6-10 (specifying types of documents containing
misrepresentations)).  Thus, DeVito should have no difficulty
identifying those documents within the loan file that the
Government will seek to offer at trial.[3]  This case cannot be

---

[2]    Indeed, given the manifest falsity of the statements
submitted to the banks in this case, it seems far more likely
that DeVito will defend this case on the ground that he did not
knowingly participate in any scheme to defraud, rather than by
attacking the truth or falsity of representations made to the
banks.

[3]    For example, DeVito clearly knows that appraisals are
relevant documents that may contain false statements about the
value of a property.  _See_ DeVito Mem. at 10 (referring to false
statements in appraisals concerning fraud at 3801 Purchase
Street).

compared to cases where the indictment did little more than track the language of the statute, and hundreds of thousands of undifferentiated documents were dumped on defense counsel, making the search for relevant documents a needle in the proverbial haystack. See, e.g., United States v. Nicolo, 523 F. Supp. 2d 303, 317 (W.D.N.Y. 2007); cf. United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y 2000) (bill of particulars ordered where defendants are alleged to have participated in a Medicare fraud scheme, and Government produced 2,000 Medicare files and over 200,000 pages of documents, without specifying which files were allegedly false).

Nor is this case like any of the others to which DeVito points for support. For example, in United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987), a case charging the submission of falsified insurance claims for burglaries that never occurred, the Government failed to even identify for the defense which claims the Government alleged to be false. In that circumstance, the Second Circuit faulted the Government for offering proof of twelve claims at trial, although only three were alleged to be false, and introducing numerous documents, when only three contained false statements. But in this case, the Government has identified each property for which a fraudulent loan was submitted to a bank, and each such corresponding loan. Accordingly, nothing about this case is "shrouded in mystery," as

23

it was in <u>Bortnovsky</u>.    820 F.2d at 575.

Likewise, <u>United States</u> v. <u>Davidoff</u>, 845 F. 2d 1151 (2d

Cir. 1988), where the Government was permitted to offer evidence

of extortions not identified in a RICO conspiracy count, to

establish the existence of a pattern of racketeering activity, is

not apt.    In that case, the Second Circuit held that the

Govnerment should have been forced to identify at least the

victims of the extortion schemes the Government intended to prove

at trial, to prevent unfair surprise to the defendant.    But the

Court was careful to note that RICO prosecutions require more

particularity in pleading than other cases, and that, even then,

the Court "d[id] not mean to imply that even in a RICO case the

prosecution must always disclose in advance of trial every act it

will prove that may violate some criminal statute."    <u>Davidoff</u>,

845 F.2d at 1154.

In sum, the Indictment and the discovery materials in

this case more than adequately inform DeVito of the charges

against him to enable him to prepare for trial, to prevent unfair

surprise and to plead double jeopardy.    No further

particularization is warranted in this case.

### 2.    Obstruction Of Justice (Count Thirteen)

The Indictment clearly sets forth the following

information with regard to the obstruction of justice charge: the

specific false and misleading statement DeVito is alleged to have

24

made; the document in which that statement was made; and the
specific legal proceeding in which DeVito is alleged to have
obstructed the due administration of justice.

As DeVito surely knows, in 2001 he was indicted in this
District for his role in a racketeering enterprise, <u>United States</u>
v. <u>Pasquale Parrello, et al.</u>, 01 Cr. 1120 (RLC) ("the Parrello
Indictment"). In that case, DeVito, who was alleged to be an
associate in Pasquale Parrello's crew of the Genovese Organized
Crime Family, was charged with racketeering and racketeering
conspiracy, as well with substantive counts of bank fraud
relating to two pieces of residential real estate. The bank
fraud counts charged DeVito with committing mortgage fraud on
banks that made him loans for the purchase of 3801 Purchase
Street, a property which is also a subject of the scheme to
defraud alleged in this Indictment, and for 3747 Purchase Street,
Purchase, New York ("3747 Purchase Street"). The Parrello
Indictment also contained forfeiture allegations, and the
Government consequently placed liens on 3801 Purchase Street and
3747 Purchase Street.

DeVito ultimately pled guilty to two counts in the
Parrello Indictment, including one count charging him with
conspiracy to participate in the affairs of a racketeering
enterprise (Count One) and one count of bank fraud relating to
loans obtained against 3801 Purchase Street (Count 78). Prior to

his sentencing, DeVito sold both 3801 Purchase Street and 3747 Purchase Street, with the Government's consent, on the condition that he not earn any profit from the sale of those properties.

Subsequently, in preparation for his sentencing, DeVito submitted an affidavit describing his net worth to the United States Probation Office.[4]  In that affidavit, DeVito declared that he earned no income from the sale of 3747 Purchase Street. The Government has alleged in Count Thirteen of the Indictment that this statement is false.

In addition to information in his possession, as well as in the Indictment, related to his earlier criminal case, the Government also provided discovery materials to DeVito related to this charge.  First, the Government has produced materials from Louis Cherico, Esq., which reflect that DeVito entered into a contract of sale with a woman named Nancy Armano to sell 3747 Purchase Street for approximately $960,000.  The Government has also produced a bank's loan file for 3747 Purchase Street, which reflects that, on the very same day as the DeVito-Armano "sale," 3747 Purchase Street was sold from Armano to an individual named Albert Tarantino for $1,700,000.  Finally, the Government has produced bank records showing that nearly $700,000 in proceeds

---

[4]    The Government recently provided this document, as well as DeVito's Presentence Investigation Report in connection with the Parrello Indictment, to counsel for DeVito after learning that he did not possess those documents.

from the Armano-Tarantino sale of 3747 Purchase Street was deposited into a Bank of New York bank account controlled by DeVito.

Given the detailed allegations in the Indictment and the documents produced in discovery, DeVito is not entitled to any more information to prepare his defense, avoid unfair surprise, or preclude double jeopardy. Therefore, the Court should deny his request for particulars in this respect as well.

### 3.    The Insurance Fraud Scheme (Counts Fourteen and Fifteen)

With regard to the insurance fraud scheme (Counts Fourteen and Fifteen), the Indictment, discovery and additional particularization contained in this Memorandum, provide the defendants with all the information they need to prepare for trial. Accordingly, no bill of particulars is warranted as to these Counts either.

The conspiracy and substantive mail fraud count in the Indictment provide numerous details to the defense, including the specific properties that the Government has alleged are part of the scheme to defraud insurance companies, and the nature of the false statements made to those insurance companies.

With respect to Count Fourteen, the conspiracy count, the Government intends to offer evidence that there were, during the time period alleged in the indictment, floods that occurred at 28 Brae Burn, 28 Scott Circle and 3801 Purchase Street that

27

were part of the defendants' scheme to defraud.  In addition, the Government intends to offer evidence that the scheme included a plan to break a pipe at 4350 Purchase Street and submit a false insurance claim from the ensuing damage.

The Government will offer evidence of false and misleading statements made by the defendants to one insurance company, namely Royal and SunAlliance, for the pipe break at 28 Brae Burn.  The Government does not intend to offer evidence of other fraudulent claims submitted to other insurance companies as part of its case in chief.  The Government has provided to the defendants, in the course of discovery, the insurance claim file from Royal and SunAlliance, which contains representations made by the defendants under insurance policies relating to 28 Brae Burn, as well as the insurance company's evaluation of those representations, and ultimate decisions about whether and how much to pay for each claim.

Specifically, as for the false and misleading statements made in furtherance of the insurance claim for 28 Brae Burn, the Government intends to offer evidence that the claim for repairs to the property was fraudulently inflated; the claim for reimbursement for DeVito's "alternative living expenses" was fraudulently inflated; the claim for lost rents for the owner of 28 Brae Burn was fraudulently inflated; and the claim for damage to DeVito's personal possessions, including his art work, rugs

28

and interior decorating services, was fraudulently inflated.

Finally, Count Fifteen, the substantive mail fraud count of the Indictment, identifies the property where the water damage occurred, the date of the water damage, and certain of the false statements made to the insurance company as part of the scheme to defraud. The Government intends to prove that the same fraudulently inflated claims that are at issue in the conspiracy count were fraudulently inflated for purposes of the substantive mail fraud count as well.

Similar to his requests for particulars about the mortgage fraud scheme, DeVito seeks a bill of particulars regarding the insurance fraud scheme to identify (1) all properties at issue in the scheme; (2) the insurance companies and policies involved; (3) the specific documents at issue and (4) the specific misrepresentations in those documents. (DeVito Mem. at 6). As the Indictment, when coupled with the Government's representations in this Memorandum make clear, the Government has now satisfied DeVito's first and second requests for particularization. As well, the Government has set forth the specific misrepresentations it intends to prove were made to the insurance company in furtherance of the insurance claims for 28 Brae Burn. Thus, DeVito's last request has been satisfied as well. DeVito's third request — for the identification of every document that contains a false representation — should be denied

29

for all the reasons discussed above with regard to Counts One through Twelve: because it is a request for an exhibit list three months in advance of trial; because the defendant is presently in the possession of sufficient information from the Indictment, discovery and this Memorandum to prepare for trial and to prevent unfair surprise; and because to force the Government to provide such a list of documents would improperly lock the Government in to its proof in advance of trial.  Accordingly, DeVito's request for a bill of particulars for Counts Fourteen and Fifteen should be denied.

Defendant Cordasco, in turn, filed a bill of particulars seeking no less than 187 requests for additional information from the Government with respect to Counts Fourteen and Fifteen of the Indictment.[5]  Subsequently, Cordasco clarified in his motion papers that these 187 requests are for information about (1) the "contents" of homes for which fraudulent insurance claims were filed, including the contents' actual value and the false and misleading information alleged to have been provided by the defendant about such contents; (2) the specific work Cordasco is alleged to have performed in furtherance of the conspiracy; (3) details relating to Cordasco's agreement to enter the conspiracy; and (4) particulars relating to appraisals for items

---

[5]    The Government did not respond to Cordasco's request for a bill of particulars, in part, because it could not understand a substantial portion of the requests.

allegedly inflated by Cordasco which were submitted to insurance companies for payment. (Cordasco Mem. at 4-5).

Cordasco claims that without this information, he cannot prepare for trial nor can he "make a knowing and informed choice to plead guilty because he does not know the amount of the alleged loss." (Cordasco Mem. at 6). The Government is at a loss to understand how Cordasco can claim he has not been informed "what appraisals the government will contend were fraudulently inflated, or the true value the government contends the possessions were actually worth," (id.), because Cordasco and the Government have had numerous discussions, including plea discussions, about precisely these issues, in which the Government informed Cordasco of exactly what he now contends he does not know: the appraisal the Government will allege that he fraudulently inflated (for the value of DeVito's rugs), the true value of the contents (nearly nothing), and the loss figure (approximately $90,000). Notwithstanding the fact that a bill of particulars is intended to inform the defendant of the charges he will face at trial, and not to address sentencing guidelines issues such as loss amounts, the Government has more than adequately responded to Cordasco's requests for particulars, through the information provided in the Indictment, in discovery, in plea discussions, and in this Memorandum (except for the third request, which asks for the "whens, wheres and by whoms" of the

conspiracy, to which Cordasco is not entitled, see Torres, 901
F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms"
within charged conspiracy are improper attempts at general pre-
trial discovery); United States v. Trippe, 171 F. Supp. 2d 230,
240 (S.D.N.Y. 2001) ("demands for particular information with
respect to where, when, and with whom the Government will charge
the defendant with conspiring are routinely denied")).
Accordingly, the Court should deny Cordasco's motion on this
point in full.

### Cordasco's Motion To Require Advance Notice of Rule 404(b) Evidence Should Be Denied.

Cordasco also moves to compel the Government to
disclose any evidence the Government intends to offer pursuant to
Federal Rule of Evidence 404(b).  (Cordasco Mem. at 6).

The Government agrees to disclose the substance of any
prior bad acts that the Government intends to offer at trial in a
timely fashion so that the defense may have an opportunity to
challenge their admission and the Court can make the appropriate
findings.  Under Rule 404(b), the Government must provide
"reasonable notice in advance of trial, or during trial if the
court excuses pretrial notice on good cause shown, of the general
nature of" any evidence of other crimes, wrongs, or acts that the
Government intends to introduce at trial.  Fed. R. Evid. 404(b).
Rule 404(b), however, sets no minimum time for action by the
Government in this respect.  In this regard, the Second Circuit

has approved disclosure of Rule 404(b) evidence as late as four days before, and even during, trial depending on the circumstances of the particular case.  See United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995) (notice four days prior to trial sufficient where Government provided documents to defense on same day they were obtained); United States v. Matthews, 20 F.3d 538, 551 (2d Cir. 1994) (notice during trial sufficient when balanced against need to avoid indirect disclosure of identity of Government witness).

As numerous courts have recognized, disclosure ten business days prior to trial is more than adequate for defense counsel to challenge such evidence and the Court to make any appropriate rulings.  See, e.g., United States v. Vega, 308 F. Supp. 2d 609, (S.D.N.Y. 2004) (rejecting defendants' request for immediate disclosure of Rule 404(b) evidence, noting that "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)") (citing United States v. Heredia, 2003 WL 21524008, at *10 (S.D.N.Y. July 3, 2003); United States v. Silberstein, 2003 WL 21488024, at *7 (S.D.N.Y. June 27, 2003); United States v. Greyling, 2002 WL 424655, at *4 (S.D.N.Y. Mar. 18, 2002); United States v. Ojeikere, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004))).

In this case, the Government intends to file a motion

<u>in</u> <u>limine</u> for admission of Rule 404(b) evidence at least ten business days before the start of trial, or in accordance with whatever schedule for such notice the Court sets. In view of this representation, and because "the defendant has identified no special circumstances, other than the time needed to prepare motions to preclude such evidence, that would warrant earlier disclosure of any Rule 404(b) evidence," <u>Vegas</u>, 309 F. Supp. 2d at 617, the Court should deny Cordasco's motion to require the Government to make immediate disclosure of uncharged crimes evidence.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, the Court should deny the defendants' motions for bills of particulars, and deny Cordasco's motion for immediate disclosure of Rule 404(b) evidence.

Dated:    June 9, 2008
          New York, New York


                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney


                         By:_____
                              KATHERINE R. GOLDSTEIN
                              JONATHAN B. NEW
                              Assistant United States Attorney
                              Tel. No.: (212) 637-2641/1049

34

### AFFIRMATION OF SERVICE

KATHERINE R. GOLDSTEIN, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

That, on June 9, 2008, I caused one copy of the within Government's Memorandum of Law in Opposition to Defendants' Pre-Trial Motions to be delivered by Federal Express to:


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    New York, New York
          June 9, 2008


_____
KATHERINE R. GOLDSTEIN